## AMERICAN HEATING & PLUMBING CO.
### v. KEENE.
### No. 8733.

Circuit Court of Appeals, Fifth Circuit.
April 27, 1938.

Victor W. Gilbert and Chas. B. Cameron, both of Meridian, Miss., for appellant.

Marion W. Reily and M. V. B. Miller, both of Meridian, Miss., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

E. V. Keene, employed as a pipe fitter by American Heating & Plumbing Company, sued it for a negligently inflicted injury to his hand while at work. A verdict for the defendant was instructed on the first count, which alleged defects in the pipe wrench which was in use, but the second count, which alleged that the master had failed to use a method of work which was safe and had chosen one which exposed the servant unreasonably to danger, was submitted to the jury and a large verdict returned. We need decide only whether the motion of defendant for an instructed verdict on the second count should have been sustained.

The evidence is that a crew of pipe fitters, directed by one Ludenlaub as foreman, was engaged in dismantling a steam heating plant in a public school building in Meridian, Miss., in order to install a new plant. A rain set in before quitting time which prevented outside work, and Ludenlaub to use their time put the men to salvaging fittings from old pipes which had been taken down in the basement. They were attempting to remove a cast-iron elbow from a piece of 4-inch pipe about 10 feet long. The pipe was laid upon the cement floor with something under the elbow end to raise it above the floor, and a 48 inch Stillson wrench was placed on the elbow and tightened by the foreman. The wrench was set at an angle of about 45 degrees with the floor, and was to be pressed downwards to unscrew the elbow. The pipe was gripped by heavy pipe tongs and held by other men upon the floor to keep it from turning. Two negroes on the wrench had failed to move the elbow and the foreman directed Keene to help them, and after adjusting the wrench told them to "Come down on it." Under the force applied by the three men the elbow either cracked or suddenly turned, no one knew which, and the wrench went to the floor, catching Keene's hand under the end of it. The injury was not at first thought serious, but an abscess developed which caused a permanent disablement. The evidence further is that the method pursued is a usual one on jobs away from the shop, that the crushing or sudden turning of fittings often happens and wrenches slip and hands are in constant danger of being mashed. Pipes may also be fastened in pipe vises to be disjointed; and when additional power is needed on the wrench a piece of pipe may be slipped over its handle so as to lengthen it and give greater leverage. There was a pipe vise such as is usually carried to jobs in the yard outside in the rain, but the foreman said he did not know whether it was large enough to handle a 4-inch pipe. Another witness, a disinterested contractor, said so large a pipe could not be handled in such a vise because the great force necessary to be applied would overturn the tripod or bench to which the vise was fastened.

Supposing the foreman to be the representative of the master rather than a fellow servant, we do not think the facts show him negligent. The Stillson wrench, a simple and universally used tool, was in good order and was properly set by him. The command to bear down on it was not a negligent but a necessary and usual command. Keene very well knew that the purpose was to push the wrench toward the floor, and that, if the wrench should slip or the fitting suddenly turn, the wrench would go to the floor suddenly. He did not need to be warned of that. He also knew that in such a case if he put his hand under the end of the wrench that it would be mashed, for it would be the end of the wrench that would make contact with the floor. Yet he grasped the end of the wrench instead of merely pressing down on it, and in that way got his hand caught. The thing they were doing was a common and well-understood procedure. It was not dangerous if common skill and prudence were exercised by the men. The vise out in the rain would probably not have served. At least it is not proven that it would. To lengthen the wrench handle by putting a piece of pipe on it would have made no difference if Keene had grasped the end of the pipe. If the negroes pushed too hard—there is no testimony that they did—it was the fault of fellow servants. We do not see that the master is shown to have done or omitted anything that would charge him with the accident. The jury ought to have been so directed. The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.

HOLMES, Circuit Judge (dissenting).

The amount of the verdict is not involved on this appeal. The sole question at this time is whether there was substantial evidence to support an inference of any negligence on the part of the master which directly and proximately contributed to the appellee's injury. The degree of such negligence is not decisive of liability if it materially contributed to the injury in whole or in part. It was admitted in argument by counsel for appellant that the fellow-servant rule has no application to the facts before us. This was tantamount to an admission that the foreman was not a fellow servant with the injured employee, but stood in the place of the master; but,

whether admitted or not, the evidence showed and the jury found that the foreman was in charge of the work and had the right to control and direct the services of the others on the job; that he prescribed the manner of doing the work and gave the peremptory order to bear down on the wrench, which resulted in the injury; that this was an obviously dangerous thing to do and a dangerous way to do it; that there was another way to do it which was safe and simple; that the foreman was negligent in prescribing an unsafe method, and that the hazard was still further increased by directing it to be done in a hurry; that appellee was called upon to help after the work had begun, and immediately obeyed the order of the foreman without having had an opportunity to consider the danger.

As there is no contention that Keene voluntarily injured himself, it is immaterial whether he knew and appreciated the danger, because of the statutes presently to be quoted, and what is stated in the opinion as to what Keene knew may with stronger reason be applied to the foreman who represented the master. With the mere change of name, what is stated would read as follows: The foreman knew very well that the purpose was to push the wrench toward the floor, and that, if the wrench should slip or the fittings suddenly turn, the wrench would go to the floor suddenly. He did not need to be warned of that. He (the foreman) also knew that in such case if he (Keene) put his hand under the end of the wrench that it would be mashed, for it would be the end of the wrench that would make contact with the floor. To this may be added that the foreman knew that, in order to bear down forcefully, it was necessary to grasp the wrench tightly, as great force could not be obtained by pressing down on the wrench with the open hand.

For the purposes before us at this time, the Mississippi statutes relieve the employee from the consequences of negligently proceeding in the face of obvious danger, but no such statute relieves the master from the consequences of such negligence on the part of the foreman. With deference, these statutes have not been given force and effect. Nothing less than setting them out in full will suffice to convey their meaning and draw attention to their efficacy. They are sections 511 and 513 of the Mississippi Code of 1930, as follows:

"511. In all actions hereafter brought for personal injuries, or where such injuries

have resulted in death, or for injury to property, the fact that the person injured, or the owner of the property, or person having control over the property may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured, or the owner of the property, or the person having control over the property."

"513. In all actions for personal injury to an employee, and in all actions where such injury results in death, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death results in whole or in part from the negligence of the master; except as to conductors, or locomotive engineers, in charge of dangerous or unsafe cars or engines voluntarily operated by them."

The common-law doctrines of contributory negligence and assumption of risk were imbedded so long in our jurisprudence that it is difficult wholly to eliminate them from our mental processes. This is demonstrated by the insistence in argument that Keene's knowledge should weigh against him, when the important thing is what knowledge the master had, or should have had, and what use he made of it. In the face of these statutes, how can it be said that the employee, who had been upon the job but a moment, assumed an obvious danger and negligently lost his fingers, and that the employer, who was in immediate charge, directing every detail of method, was guilty of no negligence at all? This is not a case where the master furnished the servant a simple tool and left him to work alone or with fellow servants only. The master had the choice of a dangerous method, which admittedly takes a certain toll in fingers, or of the safer methods which the jury held should have been adopted. Whether the vise, which had been out in the rain, would have served, or whether a piece of pipe to lengthen the wrench would have made a difference, were questions for the jury. The negroes were the only fellow servants with Keene on the job, and they are exonerated by the admissions of counsel and in the opinion of the court. This leaves the foreman and Keene, master and servant, as the only responsible persons present. The negligence must be assigned to one of them or apportioned between them, unless the injury was purely accidental. If the job had to be done over, how can it be said that the master

would not be negligent in directing it to be done in the same way? Yet, it is insisted that Keene knew and appreciated the danger, and the evidence demonstrates that the master's knowledge was superior to that of the servant, as his opportunity was greater, the foreman having devised the method and been on the job longer.

It is elementary that state decisions construing state statutes are binding on a federal court in the absence of a conflict with any federal constitutional provision. Therefore, J. J. Newman Lumber Co. v. Cameron, Miss., 174 So. 571, 572, is controlling here in its construction of section 513, Code of 1930, which abolishes the common-law doctrine of assumption of risk when the master is negligent. In that case, the Supreme Court of Mississippi said: "The chisel and maul were both simple tools, but the danger to the appellee in the use thereof arose, not from any defects therein, but from the mode and manner in which he was required to use them, i. e., hold a chisel, twenty-two inches in length, against a nut or bolt, while the chisel is being struck by another with a twelve-pound iron maul for the purpose of cutting the bolt. This danger should be manifest to any one who knew the length of the chisel and that it was to be so used, but if not, the danger could have been easily ascertained by the exercise of slight care for that purpose, consequently the appellant's foreman was guilty of negligence when, over the appellee's protest, he peremptorily ordered the appellee to use the chisel, with knowledge of the mode and manner of its required use. The work the appellee was doing was of a temporary character, and would have been completed in a short time, so that the foreman's order to use the chisel and maul is analogous to an order by a master to his servant to use a defective appliance, coupled with a promise to repair it. Moreover, the appellee was bound to obey this order, or risk being disciplined for insubordination. Under such circumstances, the master is not relieved of liability for an injury from the use of unsafe tools, although the servant may have been as competent as the master to determine the suitability thereof for the performance of the required work. Any question as to the assumption, by the appellee, of the risk incident to the use of the chisel and maul in the mode and manner required is eliminated by section 513, Code 1930, which abolishes the common-law doctrine of assumption of risk by a

servant when the master is negligent. The court below, therefore, committed no error in refusing to grant a directed verdict for the appellant."

In the case before us, a fair jury may reasonably have concluded that the use of 4-foot chain tongs and a 4-foot Stillson wrench to remove a cast-iron elbow from an 11-foot section of 4-inch pipe was a negligent method of operation. The chain tongs lying flat on the floor were the only means employed to hold the pipe and elbow in place. The 4-foot Stillson wrench, placed at an angle of 45 degrees with the concrete floor, left a space of about 2½ feet between the portion of the handle to be gripped and the floor. In placing their weight upon the handle of the wrench in this position, the men necessarily leaned or stooped to such an extent that they had little or no control of their bodily equilibriums without the support of the handle of the wrench. Therefore, when the elbow turned, as was intended, this support was removed and the fall to the floor was unavoidable. The jury may further have concluded that an ordinarily careful man would have doubled the length of the wrench by placing a section of pipe thereon, thereby increasing the height of the grip from the floor to 4 or 5 feet and allowing the workmen to take a more stable position. From this the ultimate conclusion follows logically that it was negligence to use the method which caused the injury.

In brief, the verdict of the jury established that the method adopted was dangerous; that appellant knew it, or should have known it; and that there was a safe, known, available, and commonly used method which was not adopted. The record shows that there was substantial evidence to support this verdict. On this point, it is only necessary to quote and adopt a fair statement from appellant's brief:

"The testimony is not without conflict as to the usual and customary method followed in doing work of this kind. Some of the testimony being that the usual and customary manner of doing this work was to attach the wrench at an angle of about 45 degrees from the floor and require the men or employees to supply sufficient force to cause the wrench to move downward and thereby turn the elbow; while there was other testimony that the usual and customary method was to place the pipe in a vise about the level of the floor and then have the proper force applied to the handle of the wrench and cause the elbow to turn; there was also testimony to the effect that in case the turning was difficult, to attach the wrench to the pipe as first indicated, and then have the handle lengthened and more lever power obtained by placing a piece of pipe over the handle of the wrench.

"There was testimony that if the first method was used the turning would frequently be sudden and abrupt and cause the workers to have their fingers or hand caught between the handle and floor below. [This is the method which was followed by appellant.]

"There was testimony that it was impractical in using a vise to do the work there at that time and other testimony that a vise could have been used but there was no testimony that a piece of pipe could not have been placed in the handle of the wrench lengthening the handle and causing less force to be used.

"There was testimony that the first method was used under the directions of the defendant's foreman who was then present and directed the method of work and that the plaintiff and two other men were directed by him to use their weight and force to move the handle downward and some of the testimony was that this direction required that they exert their full weight and power in this effort and the plaintiff testified that the direction required such haste to the extent that he did not have time to think of the safety of the method being used.

"And there was testimony further that when these three men undertook to obey these directions and they applied their weight and force to the handle of the wrench that the elbow gave way or turned suddenly and the handle of the wrench was thereby caused to move downward to the floor below and the plaintiff's hand was caught between this handle and the floor and injured."

I think the question of negligence was for the jury, and that the judgment should be affirmed.